UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                              :

LAURA BETH ROSE,                 :
                              :
                Plaintiff,    :
                              :
              v.             :
                              :
COMMISSIONER OF SOCIAL SECURITY,  :
                              :
                Defendant.   :
                              :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   July 18, 2014

13 Civ. 4021 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

       Plaintiff Laura Beth Rose, proceeding *in forma pauperis*, filed this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of a decision of the Acting Commissioner of Social Security (the "Commissioner") that denied Plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits based on a finding that Plaintiff was not disabled under the Act. The parties have cross-moved for judgment on the pleadings. Because the Commissioner's decision is supported by substantial evidence, Defendant's motion is granted, and Plaintiff's motion is denied.

## BACKGROUND[1]

### A.    Plaintiff's Physical Impairments

Plaintiff claimed a disability since July 1, 2010, as a result of neck and back pain.  (SSA Rec. 22, 52).  Specifically, Plaintiff reported difficulty turning her neck, reaching, climbing stairs, sitting, standing for long periods, walking long distances, and lifting more than 10 pounds, and that she could not bend, kneel, or squat.  (*Id.* at 57-58, 67-69, 180-81, 183-84, 186).  Plaintiff complained that the pain interfered with her sleep, and that while pain medications relieved her pain slightly for a few hours, those same medications made her tired.  (*Id.* at 71, 187).

Plaintiff contended that she had tried physical therapy, medications, and injections, but they did not bring about any significant relief.  (SSA Rec. 60-62).  Plaintiff lived in a five-person household that included her mother, boyfriend, and 16-year-old son.  (*Id.* at 50, 179-80, 311).  She spent her days resting, talking on the phone, eating, exercising, reading, listening to music, socializing, playing cards, watching television, using a computer, and taking medications.  (*Id.* at 179, 183, 188).  She could prepare simple meals, wipe or dust furniture, and do light laundry.  (*Id.* at 181).  Plaintiff reported that she needed help showering (*id.* at 179-80), that she needed to sit to get dressed (*id.* at 179-80), and that she frequently left her shoelaces tied (*id.* at 180).  She went out every day by walking or by taxi.  (*Id.* at 182).  She shopped in stores and on the

---

[1]    The facts contained in this Opinion are drawn from the Social Security Administrative Record ("SSA Rec.") (Dkt. #7) filed by the Commissioner as part of her answer.  For convenience, Defendant's supporting memorandum is referred to as "Def. Br."; Plaintiff's supporting memorandum as "Pl. Br."; and Defendant's reply as "Def. Reply."

computer; it took her approximately one hour to shop in a store.  (*Id.* at 182).
Plaintiff also visited with friends or family several times per month, and went to
the movies once a week.  (*Id.* at 183).

**B.     Plaintiff's Medical Evaluations**

### 1.     Open Door Family Medical Center ("ODFMC")

Plaintiff visited ODFMC from July 2010 to October 2011 for primary
care.  (SSA Rec. 233-36, 326-50, 357-58, 369-81, 450-57).  Plaintiff saw Dr. Ali
Islam from July 28, 2010, to April 13, 2011 (*id.* at 233-36, 335-36, 340-41,
344-45), and Dr. Thomas Yuen on July 18, 2011 (*id.* at 332-34).  The doctors
recorded Plaintiff's complaints of tenderness and trigger points in her back (*id.*
at 233, 235, 335, 344), and Dr. Islam noted one positive straight leg raising
test (*id.* at 335), but their findings were otherwise normal (*id.* at 233, 235, 335,
340, 344).  Dr. Islam diagnosed sciatic neuralgia and herniated disc syndrome
(cervical/lumbar) (*id.* at 335), while Dr. Yuen diagnosed back pain and
herniated disc syndrome (cervical/lumbar) (*id.* at 333).  Treatment included
pain medications (*id.* at 233, 235, 333, 335, 340, 344) and physical therapy.
(*Id.* at 235).  Dr. Yuen also prescribed a cane.  (*Id.* at 381).

Dr. Yuen completed two functional assessments on October 12, 2011.
(SSA Rec. 370-79, 453-57).  In those assessments, Dr. Yuen reported seeing
Plaintiff for two to three months for neck and back pain.  (*Id.* at 370, 375).  Dr.
Yuen diagnosed back pain/sciatica and gave a fair prognosis, citing MRIs of the
cervical and lumbar spines, as well as findings of tenderness, abnormal gait,

and muscle spasm.  (*Id.* at 370-71, 375-76).  However, Dr. Yuen noted that copies of those MRI reports were not available.  (*Id.* at 370).

Dr. Yuen estimated that Plaintiff could walk two to three city blocks and stand for five to ten minutes, but that she could stand or walk for no more than two hours per day and needed to use a cane.  (SSA Rec. 371-72, 377-78).  In the doctor's estimation, Plaintiff could sit for 15 minutes at a time, but could only sit for no more than two hours per day; she needed to walk for five to ten minutes every 15 to 20 minutes, and needed a job that permitted her to shift positions at will.  (*Id.* at 371-72, 376-77).  Plaintiff could frequently lift or carry less than ten pounds, she could rarely lift or carry ten pounds, and she could never lift or carry more than ten pounds.  (*Id.* at 373, 378).  Plaintiff could never twist, stoop, crouch or squat, climb ladders or scaffolds, but was unlimited in reaching, handling, and fingering.  (*Id.*).  Dr. Yuen indicated that his assessment applied retrospectively to 1993.  (*Id.* at 373, 379).

### 2.    East Coast Pain Management ("ECPM")

Plaintiff went to ECPM from September 2010 to March 2011 for pain management.  (SSA Rec. 237-309, 382-449).  There, Plaintiff was treated by Dr. Gladys Cardenas (*id.* at 238, 388, 394, 431), and Dr. Bozena Sokol (*id.* at 431, 440).  The two doctors typically observed tender or trigger points in Plaintiff's neck and back (*id.* at 238, 388, 394, 413, 431), and reduced or painful range of motion in the neck and back (*id.* at 238, 388, 394, 413, 431).  Dr. Cardenas noted occasional sensory abnormalities (*id.* at 238, 413, 431), but the doctors' findings were otherwise normal (*id.* at 238, 388, 394, 413, 431, 440).

Plaintiff underwent an MRI examination pursuant to a referral from ECPM in September 2010.  The cervical MRI revealed vertebral ridging at C3-C4, with broad-based herniation effacing the cerebrospinal fluid ("CSF") space, but no central or peripheral stenosis[2]; vertebral ridging at C4-C5 with mild foraminal narrowing left greater than right; central herniation at T1-T2; and a high T2 signal intensity nodule near the thyroid.  (SSA Rec. 251-52).

The lumbar MRI revealed retrolisthesis[3] at L5-S1 with disc dessication, disc space narrowing, central disc herniation, and annular tear effacing the CSF space abutting the S1 nerves, but causing no central or peripheral stenosis; disc desiccation at L4-L5 with disc space narrowing, broad-based herniation, and annular tear effacing the CSF space, but causing no central or peripheral stenosis; and mild L4-L5 and minor L5-S1 facet joint degenerative changes.  (*Id.* at 253-54).

Plaintiff also underwent an Electromyelogram ("EMG") study in September 2010; the study revealed abnormalities in the lumbar and cervical spines, but not in the lower extremities.  (SSA Rec. 266, 277-78, 283, 291).  ECPM physicians diagnosed cervical spine pain and lower back pain with radiculopathy.  (*Id.* at 430).  Treatment included injections (*see, e.g.*, *id.* at 432); physical therapy (*see, e.g.*, *id.* at 433-35); and a pain patch (*id.* at 412, 414).

---

[2]    Spinal stenosis is defined as a "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1579 (27th ed. 1988) ("DORLAND'S").

[3]    Retrolisthesis is a posterior displacement of a vertebral body that can cause localized back pain, pain on hyperextension, and sciatic pain due to irritation of the first sacral nerve root.  DORLAND'S at 619.

### 3.   Westchester Spine and Brain Surgery ("WSBS")

Plaintiff visited WSBS for consultations on August 3 and 17, 2011.  (SSA Rec. 361-68).  Plaintiff saw Dr. Bennie Chiles, a neurologist, both times.  (*Id.*).  Dr. Chiles observed some patchy sensation in the right extremities (*id.* at 362-63), and difficulty with heel-toe walking during the second examination (*id.* at 362), but his findings were otherwise normal (*id.* at 362-63).

Plaintiff underwent additional MRI testing in August 2011, pursuant to a referral from Dr. Chiles.  The cervical MRI revealed mild degenerative disc disease, with straightening of the cervical curvature and bulging disc at C3-C4 flattening the sac; but no disc herniation, foramina narrowing, or spinal stenosis.  (SSA Rec. 356).  The lumbar MRI revealed central disc herniation at L5-S1 that appeared to contact the descending S1 nerve root, and small central disc herniation at L4-L5, but no significant central canal or foraminal stenosis.  (*Id.* at 354).  Dr. Chiles diagnosed degenerative disc disease at the L5-S1 level.  (*Id.* at 363).  Dr. Chiles recommended conservative, *i.e.*, nonsurgical, treatment, such as oral medications, physical therapy/exercise, chiropractic care, and continued work in pain management.  (*Id.* at 363).

### 4.   Plaintiff's Consultative Examination

Finally, Plaintiff underwent a consultative examination on October 18, 2010, with Dr. Suraj Malhorta.  (SSA Rec. 310-19).  Dr. Malhorta observed that Plaintiff experienced some difficulty with squatting and heel-toe walking, and with positive straight leg raising in the supine position, but concluded that Plaintiff's findings were otherwise normal.  (*Id.* at 311-12).  Dr. Malhorta's

diagnoses included cervical and lumbar disc herniation by history. (*Id.* at 312). The prognosis was good, but Dr. Malhorta indicated that Plaintiff needed orthopedic management of her pain. Dr. Malhorta concluded that Plaintiff had moderate limitation in bending and squatting. (*Id.*).

Dr. Malhorta then completed a functional assessment based on a physical examination. (SSA Rec. 314-19). Dr. Malhotra reported that Plaintiff could lift up to 10 pounds continuously, and 11 to 20 pounds occasionally, but could never lift more than 20 pounds. (*Id.* at 314). Plaintiff could carry 10 pounds continuously, but no more. (*Id.*). Plaintiff could sit for 30 minutes at a time and for seven hours per day; she could stand for 15 minutes at a time and for two hours per day; and she could walk for 15 minutes at a time and for one hour per day. (*Id.* at 315). Plaintiff did not require a cane to ambulate. (*Id.*). Plaintiff could frequently push or pull with her hands; frequently operate foot controls; and continuously reach, handle, finger, and feel. (*Id.* at 316). Plaintiff could frequently climb stairs and ramps; she could occasionally balance, stoop, and kneel; but she could never climb ladders or scaffolds, crouch, or crawl. (*Id.* at 317).

## C. Plaintiff's Work History

Plaintiff reported work history as a movie theater manager and a medical receptionist. Most recently, Plaintiff had worked as a movie theater manager, which required her to stand for one hour, climb stairs, and sit for two to three hours, with no kneeling, crouching, crawling, or handling. (SSA Rec. 52-56, 164, 170). She reported that this job initially required her to lift up to 10

pounds, and later up to 50 pounds. (*Id.* at 53, 190). Plaintiff claimed that she was disabled beginning on July 1, 2010, yet admitted that she was able to work as a theater manager through September 8, 2010. (*Id.* at 22). She testified that her injuries bothered her, but acknowledged that she was able to work through August 10, 2010, at which time her hours were reduced. (*Id.*). She last worked full-time on August 15, 2010, and stopped working altogether on September 8, 2010. (*Id.* at 59). Before transitioning to part-time status, Plaintiff had been working up to 100 hours biweekly. (*Id.* at 233). Plaintiff reported that she stopped working because of pain in her neck and lower back. (*Id.*).

Prior to that, Plaintiff had worked as a medical receptionist in two different physicians' offices; she reported that those positions generally required her in a given day to walk for one hour, stand for one hour, sit for four hours, lift up to 10 pounds, and write, type, or handle small objects for up to six hours; the jobs did not, however, involve kneeling, crouching, or crawling. (SSA Rec. 191).

### D.    Social Security Administrative Proceedings

Plaintiff filed applications for SSDI and SSI benefits on August 18, 2010, alleging disability due to neck and back pain beginning on July 1, 2010. (SSA Rec. 85-89). Those applications were denied on November 17, 2010. (*Id.* at 85-86, 93-98).

At Plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") Roberto Lebron, at which Plaintiff and her counsel were present.

(SSA Rec. 44-84).  The ALJ conducted a *de novo* review of the record and on March 16, 2012, issued a decision finding that Plaintiff was not disabled.  (*Id.* at 16-30).  The decision became final on April 12, 2013, when the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-6, 14).

The substance of the ALJ's decision is as follows: The ALJ first determined whether Plaintiff was engaged in substantial gainful activity, and noted that "'[s]ubstantial work activity' is work activity that involves doing significant physical or mental activities," while "'gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized.'"  (SSA Rec. 20 (citing 20 C.F.R. § 404.1572(a), (b))).  If an individual is engaged in substantial gainful activity, she is deemed not disabled.  20 C.F.R. § 404.1520(a)(i).  The ALJ determined that Plaintiff had not been engaged in substantial gainful activity since September 8, 2010, though she claimed a disability beginning July 1, 2010.  (SSA Rec. 21).

Having determined that Plaintiff was not engaged in substantial gainful activity, the ALJ proceeded to step two of the analysis.  The ALJ assessed whether Plaintiff had a medically determinable impairment that was "severe" or a combination of impairments that was "severe."  20 C.F.R. § 404.1520(c).  "An impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities."  (SSA Rec. 20 (citing 20 C.F.R. § 404.1521 and Social Security Rulings ("SSR") 85-28, 96-3p, and 96-4p)).  Conversely, "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence

9

establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (*Id.*).  If a claimant does not have either a severe medically determinable impairment or a combination of impairments, she is not disabled.  (*Id.*).  The ALJ determined that Plaintiff had a severe impairment, specifically, discogenic disease of the lumbar spine.  (SSA Rec. 21).[4]

The ALJ then moved onto the third step of the analysis.  At this step, the ALJ must determine "whether the claimant's impairment or combination of impairment is of a severity to meet or medically equal the criteria of impairment listed in 20 CFR Part 404, Subpart P, Appendix 1."  (SSA Rec. 20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)).  The ALJ determined that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (SSA Rec. 21).

The ALJ then proceeded to evaluate Plaintiff's residual functional capacity ("RFC").  The ALJ found that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)," but that she "cannot engage in activities requiring no more than occasional bending and squatting."  (*Id.* at 21-22).[5]  In reaching this

---

[4]     Discogenic changes are those "caused by derangement of an intervertebral disc." DORLAND'S at 510.

[5]     "The applicable regulations explain that 'sedentary work' involves 'lifting no more than 10 pounds at a time,' 'sitting,' and a 'certain amount of walking or standing.'  The Social Security Administration has further explained that at the sedentary level of exertion,

determination, the ALJ considered (i) "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence"; and (ii) "opinion evidence." (SSA Rec. 22 (internal citations omitted)).

Turning to the first category, in considering Plaintiff's symptoms, the ALJ followed a two-step process. First, he determined whether there was an underlying impairment "that could reasonably be expected to produce the claimant's pain or other symptoms." (*Id.*). Second, the ALJ evaluated the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functionings." (*Id.*). In this regard, he observed that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [the ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record." (*Id.*).

The ALJ noted Plaintiff's testimony that she (i) had difficulty standing or walking for more than five or six minutes at a time; (ii) could not bend or squat without difficulty; (iii) experienced radiating pain originating in her back and neck; and (iv) had carpal tunnel syndrome in both hands, muscle weakness, spasms, numbness, and tingling. (SSA Rec. 23). Plaintiff reported that she

---

periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Penfield* v. *Colvin*, No. 13-2225-cv, 2014 WL 1673729, at *1 n.1 (2d Cir. Apr. 29, 2014) (summary order) (citing, *inter alia*, *Determining Capability to Do Other Work — Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*, 61 Fed. Reg. 34478, 34480 (Soc. Sec. Admin. July 2, 1996)).

could not engage in activities requiring more than occasional bending or squatting, and could not remain seated for more than 15 minutes before changing positions; however, she simultaneously acknowledged that she slept seven hours per night, could lift five to ten pounds, and could shop and tend to her personal needs with some assistance.  (*Id.*).

Ultimately, the ALJ found Plaintiff's "allegations of her inability to work on a continued, sustained basis as a result of her functional limitations" to be "not credible."  (SSA Rec. 22).  The primary reason for this determination was that Plaintiff had reported on her initial application that she was disabled due to back and neck injuries beginning on July 1, 2010, but admitted that she was working at the time of the application, and, further, that she had worked up until September 8, 2010.  (*Id.*).  Plaintiff stopped working because of the pain in her neck and back; at that time, however, she was required to stand on her feet "constantly," carry objects weighing up to 50 pounds, and engage in activities requiring frequent bending and lifting.  (*Id.* at 22-23).

The ALJ next considered the medical and opinion evidence.  The ALJ first reviewed the July 2010 report from Dr. Islam, a treating physician who advised that Plaintiff had experienced chronic low back and sciatic pain for a period of one month.  (*Id.*).  In an August 2010 report from Dr. Islam, however, Plaintiff reported that she was undergoing physical therapy and felt much improved. (*Id.*).  The ALJ highlighted that Plaintiff advised Dr. Islam that she was working up to 100 hours biweekly, only one month after the alleged onset date of her disability, and that her pain was precipitated by twisting.  (*Id.*).

12

The ALJ reviewed the results of the MRI testing conducted in September 2010, which testing revealed, among other things, disc herniation and uncal vertebral ridging in the lumbar and cervical spines.  (SSA Rec. 23).  Subsequently, Dr. Islam stated in an October 2010 report that Plaintiff has "herniated disc syndrome of the cervical and lumbar spines"; Dr. Islam recommended no further treatment beyond pain management and, to that end, prescribed medication.  (*Id.* at 24).

The ALJ noted the results of nerve conduction studies Plaintiff underwent in September 2010, as well as a report from ECPM of that same month.  These materials revealed that Plaintiff had realized partial relief of her neck, shoulder, and back pain following a brief course of physical therapy.  (SSA Rec. 24).

Plaintiff underwent a consultative evaluation in October 2010 with Dr. Malhotra, the results of which were also analyzed by the ALJ.  Dr. Malhotra found that Plaintiff appeared to be in no acute distress and had a normal gait, but that she experienced mild difficulty walking on her heels and toes due to back discomfort.  (SSA Rec. 24).  Dr. Malhotra reported that Plaintiff needed no help changing for the examination, getting on or off the examination table, or rising from a chair.  (*Id.*).  Plaintiff's grip strength was normal, and she was able to fasten a zipper, tie, and button, but she was slightly slow in doing so on both sides.  (*Id.*).  Dr. Malhotra ultimately assessed that Plaintiff had a moderate limitation in bending and squatting, as well as mildly slow fine

13

dexterity of the hands, but that she was capable of performing sedentary work that did not involve crouching or crawling.  (*Id.* at 25).

The ALJ next reviewed the medical records for 2011.  Plaintiff had undergone additional MRI testing in August 2011, which testing confirmed some disc herniation of the lumbar spine, but not of the cervical spine.  (SSA Rec. 25).  Plaintiff was evaluated in August 2011 by a neurosurgeon, Dr. Chiles, who reported that Plaintiff had no structural abnormality involving her cervical spine that would merit operative treatment, though Plaintiff's lumbar spine exhibited level 2 degenerative disc disease, which could necessitate surgical intervention at some later date.  (*Id.*).

Lastly, the ALJ reviewed the October 2011 reports from Dr. Yuen, a treating physician.  Dr. Yuen assessed Plaintiff to be disabled; he found that she could not perform sedentary work, and was "significantly limited from a postural standpoint."  (SSA Rec. 25).  However, the ALJ assigned Dr. Yuen's opinion little weight because he found it to be unsupported and in conflict with other evidence in the record.  Specifically, Dr. Yuen's report conflicted with Dr. Malhotra's findings that Plaintiff retained far more exertional capacity, as well as Plaintiff's most recent MRI, which did not reveal significant "central canal or foraminal stenosis."  (*Id.*).  Lastly, the ALJ noted that "it is not insignificant that the claimant, while alleging an inability to work beginning in July 2010, advised Dr. Islam on August 18, 2010 that she [was] working a lot more than before — as much as 100 hours in two-weeks."  (*Id.*).  Thus, upon the ALJ's consideration of the evidence, the ALJ found Plaintiff's statements regarding

the intensity, persistence, and limiting effects of her symptoms to be not credible. (*Id.* at 26). Accordingly, the ALJ found that the "objective documentary evidence [] demonstrates the claimant retains the residual functional capacity to perform sedentary work activities." (SSA Rec. 23).

At step four, the ALJ compared Plaintiff's RFC to her relevant work history. (SSA Rec. 26). Plaintiff reported that when she worked most recently as a medical receptionist, she was required to walk for one hour, stand for one hour, and sit for four hours per day; she was required to lift up to 10 pounds; but she was not required to kneel, crouch, crawl, or handle large objects. (*Id.* at 191). In addition, Plaintiff was required to write, type, or handle small objects for up to six hours per day. (*Id.*). The ALJ determined that the requirements of this job fit comfortably within Plaintiff's RFC, and accordingly, found that Plaintiff was not disabled under the Act. (SSA Rec. 26).

## E.    The Instant Litigation

Plaintiff initiated this action on June 11, 2013. (Dkt. #1). The Commissioner filed her answer, as well as the Administrative Record, on November 6 and 7, 2013. (Dkt. #7, 8). The parties proceeded thereafter to file competing motions for judgment on the pleadings. On February 27, 2014, the Commissioner filed its motion (Dkt. #14); Plaintiff's motion was filed on April 14, 2014 (Dkt. #17); and Defendant's reply was filed on April 24, 2014 (Dkt. #19).

## DISCUSSION

### A.   Applicable Law

#### 1.   Motions Under Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The standard applied to a motion for judgment on the pleadings is the same as that used for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Sheppard* v. *Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *accord L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).  When considering such a motion, a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 548 F.3d 82, 88 (2d Cir. 2009)).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).

2.     **Review of Determinations by the Commissioner of Social Security**

In reviewing the final decision of the SSA, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). "[A]n ALJ's credibility determination is generally entitled to deference on appeal."  *Selian* v. *Astrue*, 708 F.3d 409, 421 (2d Cir. 2013).

A court must uphold a final SSA determination to deny benefits unless that decision is unsupported by substantial evidence or is based on an incorrect legal standard.  *Selian*, 708 F.3d at 417 ("In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." (citing *Talavera* v. *Astrue*, 697 F.3d 145, 145 (2d Cir. 2012))); *see also id.* ("If there is substantial evidence to support the determination, it must be upheld.").  More than that, where the findings of the SSA are supported by substantial evidence, those findings are "conclusive." *Diaz* v. *Shalala*, 59 F.3d 307, 312 (2d Cir. 1995) ("The findings of the Secretary are conclusive unless they are not supported by substantial evidence." (citing 42 U.S.C. § 405(g))).

"[S]ubstantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz*, 59 F.3d at 312 (internal quotation marks omitted).  The substantial evidence standard is "a very deferential standard of review — even

more so than the clearly erroneous standard." *Brault* v. *Social Security Admin. Comm'r*, 683 F.3d 443, 449 (2d Cir. 2010).  To make this determination — whether the agency's finding were supported by substantial evidence — "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.  *Id.* (quoting *Mongeur* v. *Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

In order to qualify for disability benefits under the Act, a claimant must demonstrate her "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Butts* v. *Barnhart*, 288 F.3d 377, 383 (2d Cir. 2004).  The claimant must also establish that the impairment is "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A). Further, the disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).

The SSA employs a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520(a)(1) ("This section explains the five-step sequential evaluation process we use to decide whether you are disabled.").  The Second Circuit has described the five-step analysis as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If [she] is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider [her *per se*] disabled.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian*, 708 F.3d at 417 (citing *Talavera*, 697 F.3d at 151).  "The claimant bears the burden of proving his or her case at steps one through four," while the Commissioner bears the burden at the final step.  *Butts*, 388 F.3d at 383.

## B.    Analysis

### 1.    The ALJ's Decision Is Supported by Substantial Evidence

Applying the applicable standards, the Court finds no basis to overturn the Commissioner's decision that Plaintiff was not disabled under the Act.  The record wholly supports the conclusion that the ALJ's decision was based on the correct legal standard and supported by substantial evidence.

The ALJ correctly identified the two issues for his determination: (i) whether Plaintiff was disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Act; and (ii) whether Plaintiff's status requirements of Sections 216(i) and 223 were met.  (SSA Rec. 19).  As to the latter issue, the ALJ found that Plaintiff's earnings record showed that she had acquired sufficient quarters of coverage to remain insured through December 31, 2014,

and thus met the insured status requirements.  (*Id.*; *see also id.* at 21).  There is no reason to doubt the accuracy of this determination.

Proceeding to the primary issue — whether Plaintiff was disabled — the ALJ applied the correct legal standard by employing the five-step evaluation mandated under the regulations.  *See* 20 C.F.R. § 404.1520(a).  The ALJ conducted a scrupulous review of Plaintiff's testimony, her medical records, and the opinions of her treating and consultative physicians.  Further, the ALJ's determination was supported by substantial evidence, in the form of Dr. Malhotra's report, Plaintiff's MRI reports, and the evidence provided regarding Plaintiff's work history.  Lastly, because the ALJ found that Plaintiff was not disabled at step three of the analysis, and that she retained the RFC to perform prior, sedentary work at the fourth step of the analysis, he did not need to proceed to the remaining step.  *See* 20 C.F.R. § 404.1520(a)(4) ("If we find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."); *Whiting* v. *Astrue*, No. 12 Civ. 274 (TCE), 2013 WL 427171, at *2 (N.D.N.Y. Jan. 15, 2013) ("[The five-step] model is 'sequential' in that when a decision can be made at an early step, remaining steps are not considered." (internal citation omitted)).

Plaintiff's objections arise from her contention that the ALJ's decision was not supported by substantial evidence.  In this regard, Plaintiff raises several overarching challenges to the ALJ's determination.  First, Plaintiff contends that the ALJ improperly rejected Dr. Yuen's opinion.  (Pl. Br. 6-7).  He did not.  As noted, Dr. Yuen was a treating physician at ODFMC, who

evaluated Plaintiff once, in July 2011; he then completed functional assessments in October 2011, in which he stated that Plaintiff was disabled and precluded from performing sedentary work.  The ALJ properly concluded that Dr. Yuen's opinion was poorly supported and appropriately assigned it little weight.  In fact, the lack of support for Dr. Yuen's opinion is readily apparent from the record.  Dr. Yuen indicated that his opinion was based upon an MRI study and Plaintiff's abnormal gait, yet he admitted that his office had no copies of the MRI, and his notes failed to detail any abnormal gait.  (SSA Rec. 233, 235, 335, 340, 344, 375-76).  Dr. Yuen's report also stated that his functional assessment went back to 1993, yet Plaintiff's medical records reveal no visits to Dr. Yuen's practice prior to July 2010, and no visits with Dr. Yuen himself until July 2011.  (*Id.* at 235-36, 332-34, 373).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record."  *Penfield*, 2014 WL 1673729, at *1 (internal citation and quotation marks omitted); *Lewis* v. *Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (summary order) ("With respect to [a treating physician's] opinion, the ALJ was not required to give it controlling weight where it was unsupported by the objective medical evidence." (internal citation omitted)).  This is precisely what the ALJ did here and the record supports his decision to do so.  *See De La Cruz* v. *Colvin*, No. 12 Civ. 3660 (SAS), 2014 WL 2998531, at *11 (S.D.N.Y.

July 3, 2014) ("the ALJ did not err in placing limited weight on Dr. Tedoff's findings because they were inconsistent with the medical evidence").

Relatedly, Plaintiff takes issue with the reasons the ALJ gave for affording Dr. Yuen's opinion little weight. (Pl. Br. 7-8). The ALJ reported that Dr. Yuen's opinion conflicted with Dr. Malhotra's report, which found Plaintiff capable of performing sedentary work. Plaintiff objects that Dr. Malhotra is not an orthopedist, but rather a general surgeon; neither, however, is Dr. Yuen. (*Id.* at 8; Def. Br. 10-11 (internal citations omitted)). Plaintiff objects that Dr. Malhotra's opinion is based upon a functional assessment completed in one visit; the same, however, can be said for Dr. Yuen's. (Pl. Br. 7-8; SSA Rec. 332-34). Upon finding, correctly, that Dr. Yuen's opinion was unsupported and inconsistent with the other credible evidence, the ALJ properly discounted Dr. Yuen's opinion in favor of Dr. Malhotra's well-supported opinion. *See Holloran* v. *Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (medical opinions may constitute substantial evidence, even in the face of contrary opinions by a claimant's treating physician).

Plaintiff's second contention is that the ALJ failed to discuss the findings of "annular fissures which were contacting the S1 nerve root" in the most recent MRI. (Pl. Br. 7). However, the ALJ is "not required to discuss every piece of evidence submitted." *Brault* v. *Comm'r of Soc. Sec.*, 683 F.3d 443, 449 (2d Cir. 2012) (internal citation and quotation marks omitted). Notably, the record reveals that the ALJ reviewed both MRI reports in considerable detail. (*See, e.g.*, SSA Rec. 23, 25).

Third, Plaintiff argues that the ALJ improperly concluded that Plaintiff could perform her past work as a medical receptionist.  (Pl. Br. 10).  "The burden is with [Plaintiff] to show that she lacks the functional capacity to perform in her past employment position." *Tankisi* v. *Comm'r of Soc. Sec.*, 521 F. App'x 29, 35 (2d Cir. 2013) (summary order) (citing *Petrie* v. *Astrue*, 412 F. App'x 401, 404 (2d Cir. 2011) (summary order)); *see generally Rosa* v. *Callahan*, 168 F.3d 72, 77-78 (2d Cir. 1999) (collecting cases).  Plaintiff has failed to carry her burden.

The ALJ properly determined that Plaintiff had the RFC for sedentary work based upon his careful review of her testimony and the objective medical evidence.  The ALJ determined that Plaintiff's testimony regarding her capacity was simply "not credible" in light of her continued work after the alleged onset date of her disability.  The Court sees no reason to question the ALJ's credibility assessment, the basis of which is apparent from the record.  *See Tankisi*, 521 F. App'x at 35 ("Generally, it is the function of the ALJ, not the reviewing court, to appraise the credibility of witnesses." (internal citation omitted)).

Moreover, the ALJ's determination that Plaintiff's prior sedentary work fit comfortably within her RFC was supported by substantial evidence: Plaintiff's own work report, recent MRI studies, and Dr. Malhotra's assessment.  *See Hancock* v. *Barnhart*, 308 F. App'x 520, 521 (2d Cir. 2009) (summary order) ("The Commissioner's decision that Plaintiff can perform his previous work is supported by substantial evidence.  Several doctor's opinions as to Plaintiff's

residual functional capacity support the ALJ's finding."). The Court has already determined that Dr. Malhotra's report, which was consistent with Plaintiff's MRI findings, constituted substantial evidence. And to the extent that Plaintiff contends it was error to rely on her work report for information about her previous employment (Pl. Br. 10), the Commissioner's rulings clearly provide that a "properly completed [work history report] may be sufficient to furnish information about past work." SSR 82-61, 1982 WL 31387, at *2.

Plaintiff lastly objects that the ALJ failed to reconcile Dr. Malhotra's statement regarding Plaintiff's "mildly slow fine dexterity of the hands" with the fact that "most sedentary jobs require good use of the hands and fingers." (Pl. Br. 10). But Dr. Malhotra's report addresses, and resolves, this issue. Dr. Malhotra necessarily determined that any "mildly slow fine dexterity" would not interfere with Plaintiff's ability to perform sedentary work, because Dr. Malhotra ultimately assessed that Plaintiff was capable of "continuously" handling, feeling, or fingering objects with her hands. (*Id.* at 312, 316). Plaintiff's previous sedentary work fits well within these parameters. (*See Id.* at 191).

Having reviewed the entire record, the Court finds that the Commissioner's decision to deny Plaintiff's application for SSDI and SSI benefits is free from legal error and supported by substantial evidence in the record. Accordingly, there is no reason for it to be overturned.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed; Defendant's motion for judgment on the pleadings is GRANTED; and Plaintiff's motion for judgment on the pleadings is DENIED.  The Clerk of Court is directed to terminate Docket Entries 14 and 17, and to mark the case as closed.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45.

SO ORDERED.

Dated:  July 18, 2014
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

25